# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION AT COLUMBUS

DANIEL L. BARNES, III,

              Petitioner,         :    Case No. 2:18-cv-948

      - vs -                         District Judge Michael H. Watson
                                      Magistrate Judge Michael R. Merz

MARK HOOKS, Warden,
  Ross Correctional Institution

                           :
            Respondent.

## REPORT AND RECOMMENDATIONS

       This habeas corpus case, brought by Petitioner Barnes with the assistance of counsel, is before the Court for decision on the merits. The relevant documents are the Petition (ECF No. 1), the State Court Record (ECF No. 6), the Return of Writ (ECF No. 7), and Petitioner's Reply (ECF No. 17).

       Barnes seeks relief from his convictions by a jury and consequent sentences in the Muskingum County, Ohio Court of Common Pleas on counts of aggravated robbery with a firearm specification, felonious assault with a firearm specification, and having weapons under disability; he was acquitted on two kidnapping counts. (Judgment Entry, State Court Record ECF No. 6, Ex. 3, PageID 57-58.) He was sentenced to twenty-eight years imprisonment. *Id.* at Ex. 6, PageID 68-70. Those convictions and sentence remain were affirmed on direct appeal. *State v. Barnes*, 5th Dist. Muskingum No. CT2015-0013, 2016-Ohio-1168 (. Mar. 17, 2016); appellate jurisdiction declined, 146 Ohio St.3d 1430 (2016). They remain in place after a good deal of appellate and

post-conviction practice. Because the litigation history is complex, it will be adverted to as needed in this Report, rather than repeated at length.

Barnes timely filed his Petition in this Court, pleading the following Grounds for Relief:

> **Ground One:** Petitioner was deprived of the effective assistance of counsel contrary to the Sixth Amendment to the federal constitution made applicable to the States by the Fourteenth Amendment and by *Strickland v. Washington* and its progeny.

> **Ground Two**: The trial court erred in answering a question from the jury during deliberations without the presence of Appellant thereby depriving him of a fair trial as guaranteed by the State and federal constitutions.

> **Ground Three:** The trial court made statements regarding Petitioner that were untrue in violation of his right to due process protected by the Fifth Amendment made applicable to the States by the Fourteenth.

(Petition, ECF No. 1, PageID 7, 14, 19).

# Analysis

### Ground One: Ineffective Assistance of Trial Counsel

In his First Ground for Relief, Barnes asserts he received ineffective assistance of trial counsel in the following ways:

> (Sub-claim 1) Failure by the attorney to object to a question on redirect that was leading and beyond the scope of cross (T.P., Vol 1, at page 213)

> (Sub-claim 2) Failed to object to the testimony of Patrolman Andrews as hearsay (T.P. Vol 1, at pages 228-232)

(Sub-claim 3) Failed to object to Patrolman Groves who testified what Patrolman Andrews told him. Hearsay without exception. (T.P., Vol 1, at page 258[)]

(Sub-claim 4) Failed to cross examine George Guy. This witness gave conflicting accounts of the timing of when this incident allegedly occurred and could not initially identify petitioner.

(Sub-claim 5) Failed to object to the Detective's testimony regarding the amount of damage to Martin's vehicle. This was speculation and prejudicial. (T.P., Vol II, at page 322-323)

(Sub-claim 6) Failed to request lesser included offenses of assault and theft.

(Sub-claim 7) Failed to insist his client be present during a question by the jury

(Sub-claim 8) Failure to call corroborating witnesses

(Petition, ECF No. 1, PageID 9-10; Reply, ECF No. 17, PageID 1420-21). These sub-claims have been numbered 1-8 by the Magistrate Judge for precision in analysis.)

Barnes presented his claims of ineffective assistance of trial counsel to the Fifth District Court of Appeals as his Second Assignment of Error and that court decided the issue as follows:

> {¶ 33} In the second assignment of error, Appellant argues he was denied the effective assistance of trial counsel.
>
> {¶ 34} The standard for reviewing claims for ineffective assistance of counsel was set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Ohio adopted this standard in the case of *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373(1989). These cases require a two-pronged analysis in reviewing a claim for ineffective assistance of counsel.
>
> {¶ 35} First, we must determine whether counsel\s assistance was ineffective; i.e., whether counsel's performance fell below an objective standard of reasonable representation and violates any of his essential duties to the client. If we find ineffective assistance of counsel, we must then determine whether the defense was actually prejudiced by counsel's ineffectiveness such that the reliability of the outcome of the trial is suspect. This requires a showing there is a reasonable probability but for counsel's unprofessional error, the outcome of the trial would have been different. We apply the *Strickland* test to all claims of ineffective assistance of counsel,

either trial counsel, or appellate counsel. *State v. Blacker*, 5th Dist. No.2005—CA—41, 2006-Ohio-5214.

{¶ 36} A reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Bradley* at 143, quoting *Strickland* at 697.

{¶ 37} Appellant maintains his trial counsel was ineffective in failing to object to witness testimony presented at trial. Appellant cites the testimony offered by James Ricket on cross-examination. Specifically, Appellant argues the State's questioning was leading and beyond the scope of direct examination. During the testimony, Ricket testifies he heard Appellant demand "stuff" from Martin, and then Appellant took it. Tr. at 213. However, upon review of the transcript cited supra in our analysis and disposition of the first assignment of error, Ricket had testified on direct examination there were words exchanged between Appellant and Martin, and Appellant had told Martin to give him his money and to get out of the car. Tr. at 200. Therefore, the testimony elicited on cross-examination by the State was not beyond the scope of direct examination. We do not find trial counsel was ineffective for failing to object to the testimony. Further, Appellant has not demonstrated prejudice as a result of any alleged error.

{¶ 38} Appellant further cites testimony offered by Patrolman Andrews as to events Martin had told him, which should have been objected to as hearsay. Appellant maintains the testimony of the law enforcement officer bolstered allegations made by Martin.

{¶ 39} Patrolman Andrews testified at trial as to Martin opening the door of his cruiser and relating the incident to him. The evidence was not offered for the truth of the matter asserted, but rather as cumulative evidence to the testimony offered by Martin and Ricket previously as cited above. Therefore, Appellant has not demonstrated prejudice as a result of the testimony.

{¶ 40} In addition, Appellant maintains his trial counsel failed to object to testimony offered by Patrolman Groves regarding statements made by Patrolman Andrews, which he asserts also constituted hearsay. Patrolman Groves testified Patrolman Andrews radioed him and informed him the subject who assaulted Martin was Appellant.

{¶ 41} Upon review of the record, and as set forth above, Patrolman Groves testified he responded to a call of an assault with a handgun

4

with his K-9 officer. He observed a suspect run between two houses, and exited his vehicle to chase on foot, following the human scent. His K-9 alerted to something dropped by the suspect, which later was identified as a Glock 23 handgun with a laser. Patrolman Andrews testified Martin was on foot, and entered his cruiser. Martin told him he had been robbed by Appellant and assaulted. Andrews reported the incident to Groves.

{¶ 42} We find the information was not offered for the truth of the matter asserted but offered to demonstrate the reasoning as to why Patrolman Groves chased a suspect. Moreover, the information was cumulative to the testimony of Martin who testified at trial he told Patrolman Andrews he had been assaulted by Appellant. Therefore, Appellant has not demonstrated, but for the alleged error, the outcome of the trial would have been otherwise, pursuant to the second prong of *Strickland*.

{¶ 43} In addition, Appellant notes his counsel elected not to cross-examine George Guy, a witness at trial, despite the discrepancy in his testimony as to the time of day. Appellant argues his counsel could have shown the jury Guy could not have seen Appellant get out of the car after the alleged incident since the incident occurred two hours after Guy testified the two persons exited the vehicle.

{¶ 44} Upon review of Guy's testimony, he testified he was walking his dog and observed two males exit the vehicle, one with braids. He testified it was around eleven in the evening, as when he returned the news was coming on. He called 9-1-1. Patrolman Barnhart responded to the call, and testified at trial.

{¶ 45} Upon review of the entire record, we find Appellant has not demonstrated, but for any presumed error, the outcome of the trial would have been otherwise. Therefore, Appellant has not met the second prong of *Strickland*.

{¶ 46} Further, Appellant maintains his counsel failed to object to speculative testimony offered by Detective Moore regarding how the damage occurred to Martin's vehicle. Martin testified the door could have been pushed too far in one direction. Tr. at 322-323. Appellant maintains hearing the testimony from a law enforcement official on behalf of the State permitted the jury to lend truth and value to the testimony.

{¶ 47} Appellant has not demonstrated but for the alleged error, the outcome of the trial would have been otherwise. Damage to the car door was not an issue at trial, and both parties stipulated a fight took

place between them. Appellant has not demonstrated prejudice as a result of the testimony and therefore has not satisfied the second prong of *Strickland*.

{¶ **48**} Appellant also argues his trial counsel erred in not requesting a jury instruction on the lesser included offenses of assault and theft. We find Appellant has not demonstrated ineffective assistance of counsel in not requesting the lesser included offenses because Appellant completely denied not only having a firearm but also completely denied committing any theft offense. Therefore, we find it was a tactical decision of trial counsel to pursue an outright acquittal on the charges rather than attempting to mitigate the seriousness of the offenses.

{¶ **49**} As to the failure to request the instructions, a trial court must give all instructions which are relevant and necessary for the jury to weigh evidence and discharge its duty as the trier of fact. *State v. Comen*, 50 Ohio St.3d 206, 553 N.E.2d 640 (1990). Even though an offense may be statutorily defined as a lesser-included offense of another, a charge on such a lesser-included offense is required only where the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction upon the lesser-included offense. *State v. Thomas*, 40 Ohio St.3d 213, 533 N.E.2d 286 (1988). The court must view the evidence in a light most favorable to the defendant. *State v. Smith*, 89 Ohio St. 3d 323, 2000 Ohio 166, 731 N.E.2d 645 (2000).

{¶ **50**} Nevertheless, an instruction is not warranted every time any evidence is presented on a lesser-included offense. There must be sufficient evidence to allow a jury to reasonably reject the greater-offense and find the defendant guilty on the lesser-included offense. *State v. Conway*, 108 Ohio St. 3d 214, 2006-Ohio-791, 842 N.E.2d 996.

{¶ **51**} Here, had the jury accepted Appellant's presentation of the facts stating Martin engaged him in a fight over damage to the car door, during which neither he, nor Martin, possessed a firearm,1 the jury would not have convicted Appellant on the lesser-included offenses of theft or assault. We do not find trial counsel ineffective in failing to request the instructions on the lesser-included offenses of theft and assault.

{¶ **52**} Appellant also maintains the trial court's instruction to the jury following the jury's question as to whether or not they could have a transcript of the recorded interview of Appellant by Detective Hill was prejudicial error. Specifically, the trial court instructed the

jury they must rely on their collective memories, and the court instructed the jury without Appellant being present in the courtroom.

{¶ 53} Pursuant to our analysis and discussion of Appellant's fourth assignment of error, we find counsel's failure to object error, but harmless error. Appellant had a right to be present in the courtroom, but the trial court's instruction to the jury was not substantive; therefore, Appellant was not prejudiced by the trial court's instruction.

{¶ 54} Finally, Appellant maintains trial counsel failed to offer witnesses at trial to corroborate the testimony as to how Appellant knew Roberta Jones. Appellant testified on direct examination he knew June Jones as he stayed right next door to her daughter. Tr. at 488. He testified he knew her granddaughter also. Tr. at 488. He testified he knew Ms. Jones for a "long period" and she's elderly. Tr. at 488. Appellant introduced testimony as to his knowledge and familiarity with Ms. Jones at trial. Any witnesses offered to corroborate his testimony would merely be cumulative.

{¶ 55} Further, we find any presumed error on behalf of trial counsel would be harmless error. Appellant has not demonstrated but for the alleged error, the outcome of the trial would have been otherwise. Appellant was able to offer evidence of his relationship and knowledge of Ms. Jones at trial through his own testimony and the jury could consider the information.

{¶ 56} The second assignment of error is overruled.

*State v. Barnes, supra.*

When a state court decides on the merits a federal constitutional claim later presented to a federal habeas court, the federal court must defer to the state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the United States Supreme Court. 28 U.S.C. ' 2254(d)(1); *Harrington v. Richter*, 562 U.S. 86, 99-100 (2011); *Brown v. Payton,* 544 U.S. 133, 140 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor,* 529 U.S. 362, 379 (2000). The Fifth District expressly applied *Strickland,* supra, to Barnes's claims of ineffective assistance of trial counsel. The question before this Court, then, is whether that application was objectively unreasonable.

Although Barnes presented all eight of his ineffective assistance of trial counsel sub-claims in his Petition and repeated them in his Traverse, he actually argues only Sub-claims 7, 4, 2, and 3, in that order. Because they have not been argued, sub-claims 1, 5, 6, and 8 are deemed abandoned. The remaining sub-claims will be analyzed seriatim.

**Sub-claim 7: Failure to Insist that Defendant be Present During a Question from the Jury**

During deliberations the jury communicated to the court the following "We would like to request a transcript from Detective Hill and Mr. Barnes'[s] interview." *State v. Barnes, supra*. ¶ 58. The question was presented to both counsel outside the presence of the jury and of Barnes. *Id.*. The court proposed to answer the question as follows: "You must rely upon your collective memories as to what the evidence was or was not." *Id.*. Both counsel agreed with instructing the jury as proposed and counsel lodged no objection as to Barnes's absence. *Id*.

In considering this sub-claim, the Fifth District found it was error not to object to Barnes's absence, but harmless error. In doing so it applied three Supreme Court of Ohio decisions concluding that even and *ex parte* communication by the judge with the jury would be harmless error if the communication was not "substantive." *Id.* at ¶ 59 (citations omitted). As the Fifth District found, the trial judge's response to the question was plainly not substantive.

Barnes had a right to be present during this colloquy with counsel about the jury's request. However, he has made no showing of any prejudice from his failure to be present. He does not suggest any way in which the trial judge's response was incorrect or any way in which he was prejudice by it. It is very unlikely the trial judge would have stayed the proceedings to have a transcript prepared and Barnes does not suggest any way that would have helped his case. Under

those circumstances, Barnes has failed to show prejudice from his attorney's failure to object and his Seventh Sub-claim should be denied on the merits.

**Sub-claim Four:  Failure to Cross-Examine George Guy**

In his Fourth Sub-claim, Petitioner argues his attorney provided ineffective assistance when he failed to cross-examine State's witness George Guy.  Barnes alleges that a thorough cross-examination would have shown Guy's testimony inconsistent as to the time of day when the incident happened.

The Fifth District rejected this claim, concluding nothing material would have been added by cross-examination of Guy.  *State v. Barnes, supra,* ¶¶ 43-45.  Barnes's entire argument in his Traverse is "[t]his witness gave conflicting statements regarding the timing of this incident and that [sic] he could not initially identify the Petitioner.  This is not based on some strategy that relied upon a deep and thorough investigation.  Had there been any investigation, cross examination would have occurred."  (ECF No. 17, PageID 1422).

From the account of facts in the Fifth District's opinion, it is clear that Guy was not a key witness and was also apparently not a witness with any interest in this case such that cross-examination might have revealed a bias.  Nor does Barnes provide this Court with any suggestion about what facts useful to his case would have some out if cross-examination had occurred.  When a witness has testified to facts which are not particularly harmful, cross-examination may result in having the testimony reinforced rather than discredited.  Under these circumstances, Barnes has not shown it was deficient performance to fail to cross-examine Guy.

**Subclaims Two and Three:  Failure to Object to Hearsay**

In his Second and Third Sub-claims, Barnes asserts he received ineffective assistance of trial counsel when his attorney did not object to two instances of hearsay testimony.  The Fifth District decided these two sub-claims as follows:

> {¶ **38}** Appellant further cites testimony offered by Patrolman Andrews as to events Martin had told him, which should have been objected to as hearsay. Appellant maintains the testimony of the law enforcement officer bolstered allegations made by Martin.

> {¶ **39}** Patrolman Andrews testified at trial as to Martin opening the door of his cruiser and relating the incident to him. The evidence was not offered for the truth of the matter asserted, but rather as cumulative evidence to the testimony offered by Martin and Ricket previously as cited above. Therefore, Appellant has not demonstrated prejudice as a result of the testimony.

> {¶ **40}** In addition, Appellant maintains his trial counsel failed to object to testimony offered by Patrolman Groves regarding statements made by Patrolman Andrews, which he asserts also constituted hearsay. Patrolman Groves testified Patrolman Andrews radioed him and informed him the subject who assaulted Martin was Appellant.

> {¶ **41}** Upon review of the record, and as set forth above, Patrolman Groves testified he responded to a call of an assault with a handgun with his K-9 officer. He observed a suspect run between two houses, and exited his vehicle to chase on foot, following the human scent. His K-9 alerted to something dropped by the suspect, which later was identified as a Glock 23 handgun with a laser. Patrolman Andrews testified Martin was on foot, and entered his cruiser. Martin told him he had been robbed by Appellant and assaulted. Andrews reported the incident to Groves.

> {¶ **42}** We find the information was not offered for the truth of the matter asserted but offered to demonstrate the reasoning as to why Patrolman Groves chased a suspect. Moreover, the information was cumulative to the testimony of Martin who testified at trial he told Patrolman Andrews he had been assaulted by Appellant. Therefore, Appellant has not demonstrated, but for the alleged error, the

outcome of the trial would have been otherwise, pursuant to the
second prong of *Strickland*.

*State v. Barnes, supra.*

Although nominally the Fifth District decided that each of these failures to object was not

prejudicial, it reached that conclusion by holding the testimony was not hearsay in the first place.

Hearsay, both classically and under Ohio Rule of Evidence 801, is an out-of-court statement

offered in evidence to prove the truth of its content. The Fifth District determined as a matter of

Ohio law that these two statements were not offered to prove the truth of their content and gave a

cogent explanation of the admissibility of the statements for other purposes. It cannot be

ineffective assistance of trial counsel to fail to proffer a hearsay objection to non-hearsay

testimony. Thus, these two sub-claims fail on both prongs of *Strickland*.

Based on this analysis, the Magistrate Judge concludes the Fifth District's decision on

Barnes's ineffective assistance of trial counsel claims is not an objectively unreasonable

application of *Strickland*. Ground One should therefore be denied on the merits.


**Ground Two: Trial Court Error in Responding to a Jury Question in the Absence of
Petitioner**


In his Second Ground for Relief, Barnes claims he was denied a fair trial by the trial judge's

responding to the jury's transcript request without having him present. Barnes raised this claim as

his Third Assignment of Error on direct appeal and the Fifth District decided it as follows:

> {¶ 57} In the third assignment of error, Appellant maintains the trial
> court erred in answering a question from the jury without the
> presence of Appellant.

> {¶ 58} During deliberations, the jury questioned the trial court as to
> whether they could review a transcript of the recorded interview of
> Appellant by Detective Hill. The record reflects:

Thereupon, the jury had a question at 4:42 p.m. and the following occurs outside their presence.

- - -

THE COURT: We would like to request a transcript from Detective Hill and Mr. Barnes'' interview.

Answer: You must rely upon your collective memories as to what the evidence was or was not.

MR. SAMS: Yep, I agree.

MR. LITLE: (Nods affirmatively.) Sounds fine with me.

Tr. at 605.

{¶ 59} The Ohio Supreme Court has held that a communication concerning instructions between the judge and jury without the presence of the defendant or his counsel does not constitute grounds for reversal where the defendant's right to a fair trial was not prejudiced by the communication and the error was harmless beyond a reasonable doubt. See *State v. Abrams* (1974), 39 Ohio St.2d 53, 313 N.E.2d 823. If the communication is not "substantive," the error is harmless. *State v. Jenkins* (1984), 15 Ohio St.3d 164, 236-237, 15 Ohio B. 311, 473 N.E.2d 264. In *Bostic v. Connor* (1988), 37 Ohio St.3d 144, 150, 524 N.E.2d 881, the court held that the trial court's ex parte communication with the jury was harmless error because there was no "possibility that the jury's conclusion was influenced by the court's reply."

{¶ 60} Here, the trial court instructed the jury they would have to rely on their collective memories regarding the interview Detective Hill conducted of Appellant. We find, the trial court's instruction to the jury was not substantive, and there was no possibility the jury's conclusion was influenced by the court's reply. Therefore, any presumed error was harmless beyond a reasonable doubt.

{¶ 61} The third assignment of error is overruled.

*State v. Barnes, supra.*

In his Traverse, Barnes argues the trial court's proceeding in his absence deprived him of both his Sixth and Fourteenth Amendment rights (ECF No. 17, PageID 1423-27).

A defendant is guaranteed the right to be present at any stage of the criminal proceeding

that is critical to the outcome if his presence would contribute to the fairness of the procedure, i.e., be useful in ensuring a more reliable determination. *Buell v. Mitchell*, 274 F.3d 337, 363 (6th Cir. 2001), *citing Kentucky v. Stincer*, 482 U.S. 730, 745 (1987). In *Stincer* the Supreme Court rejected both Confrontation Clause and Due Process objections to a defendant's exclusion from the competency examinations of two minor female victims. However, following its decision in), the Court held a criminal defendant "has a due process right 'to be present in his own person whenever his presence has a relation, reasonably substantial, to the fulness of his opportunity to defend against the charge.'" *Stincer*, 482 U.S. at 745, quoting *Snyder v. Massachusetts*, 291 U.S. 97, 105-106 (1934). "[T]his privilege of presence is not guaranteed 'when presence would be useless, or the benefit but a shadow.'" *Stincer,* again quoting *Snyder*. The Court concluded that "a defendant is guaranteed the right to be present at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure." *Id*.

The Fifth District did not cite any United States Supreme Court precedent in deciding this assignment of error, but relied on three Ohio Supreme Court decisions. Two of them preceded *Stincer*, but one was handed down the next year, *Bostic v. Connor*, 37 Ohio St. 3d 144 (1988), superseded by statute on other grounds as discussed in *State v. DePietro*, 10th Dist. Franklin No. 09AP-202, 2009-Ohio-5854, ¶ 16. *Bostic* is not a criminal case, so it did not involve the same Due Process right that is involved with a criminal defendant's right to be present at critical stages. Instead it relied on the general rule proscribing *ex parte* communications between a judge and jury. This case, of course, does not involve any *ex parte* communications; the record shows Barnes's counsel was present for the response to the jury. The Magistrate Judge concludes the relevant United States Supreme Court case against which the Fifth District's decision must be measured is *Stincer*.

The Fifth District's decision is not an objectively unreasonable application of *Stincer*. The state court reasonably found that nothing of substance occurred at the response to jury question and that there was nothing Barnes could have contributed, i.e., this was not a proceeding about any part of the case where Barnes knew more than his lawyer.

Barnes attempts to rebut this point by asserting:

> The recording that the state provided as an exhibit was of such poor quality that the jurors could not possibly interpret what was being said. This transcript is the only way for the jury to sift through the interview and get a clear understanding of it. The court allowed this recording to be played to the jury.

> Had the Petitioner been allowed to hear the jury's question he would have brought up the substandard quality of the recording, the lack of the transcript and the fact the jury should not rely solely upon the testimony of the Detective.

(Traverse, ECF No. 17, PageID 1426.)

The claim that the recording was unintelligible is completely outside the record. Barnes did not claim on direct appeal on direct appeal that it was error not to transcribe the interview, but only that it was error to respond to the jury in his absence. (See Appellant's Brief, State Court Record, ECF No. 6, Ex. 10, PageID 107-108). He cannot now obtain relief on an assignment of error he did not make in the state courts. Nor, indeed, does he offer any proof that the recording was in fact unintelligible. If the recording as played to the jury was unintelligible, his lawyer knew that as well as Barnes did.

The Fifth District concluded its discussion of this Assignment of Error by finding that "any presumed error was harmless beyond a reasonable doubt." *State v. Barnes*, *supra* at ¶ 60. Barnes claims the Supreme Court of Ohio has improperly determined "that a criminal defendant must prove beyond a reasonable doubt that he was harmed in a substantive way, other than being blocked from a hearing, at a critical stage of his trial." (Traverse, ECF No. 17, PageID 1426,

adverting to *State v. Abrams,* 39 Ohio St. 2d 53 (1974) (Celebrezze, J., dissenting)). Petitioner's counsel misreads *Abrams*. The syllabus holds only that the judge's error of communicating *ex parte* to the jury was in this case harmless beyond a reasonable doubt, not that a defendant must prove such a constitutional error is harmful beyond a reasonable doubt. Justice Celebrezze did not dissent from any new standard for proof of harm, but rather from the finding that the error in this case was not harmless. *Abrams*, 39 Ohio St. 2d at 57.

Be that as it may, the constitutional standard for evaluating harm from a constitutional error is not set by state law. Rather, constitutional error in a habeas case is not required to be harmless beyond a reasonable doubt as is required on direct appeal by *Chapman v. California*, 386 U.S. 18, 24 (1967). Rather, constitutional error is harmless if the habeas court is satisfied it did not have a substantial and injurious effect or influence in determining the verdict. *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993), adopting standard from *Kotteakos v. United States*, 328 U.S. 750 (1946), and rejecting standard from *Chapman*. A federal court may grant habeas relief only if a constitutional violation "had substantial and injurious effect or influence in determining the jury's verdict.| *Williams v. Bauman*, 759 F.3d 630, 637 (6th Cir. 2014), quoting *Brecht*, 507 U.S. at 631.

The Magistrate Judge is not persuaded that the trial court committed any constitutional error by proceeding to respond to the jury without Barnes present. The response was not made e*x parte*, but with the concurrence of counsel for both parties. Most of the case law cited by Petitioner speaks to cases of judicial communication with a deliberating jury, which is completely (and acceptably) *ex parte*.

But even if it was a constitutional error to proceed as the trial court did, it was harmless error to do so. The judge's response was perfectly appropriate and is very common under these circumstances since few judges wish to stall jury deliberations while having a transcript prepared.

Petitioner makes no suggestion that the response was inappropriate, except for his claim that the recording was unintelligible, which he never presented to the state courts.

Therefore, Ground Two should be dismissed.


**Ground Three: Judicial Bias**


In his Third Ground for Relief, Barnes claims the trial judge was biased against him as demonstrated by an untrue statement made at sentencing. The statement to which exception is taken occurs in the transcript of sentencing. Judge Mark C. Fleagle is noting relevant facts reported in the presentence investigation report and says: "By the time you were an adult, you had amassed burglary with a felonious assault being shot – shooting Deon Draugh[a]n, a possession felony case, unauthorized use of a motor vehicle, assault, and numerous other charges as a juvenile." (State Court Record, ECF No. 6-3, PageID 1325).

The claim that this statement was untrue and evidenced judicial bias was not raised on direct appeal. Petitioner claims he raised this issue as part of his Ohio R. App. P. 26(B) Delayed Application to Reopen (Traverse, ECF No. 17, PageID 1428). Petitioner's counsel makes no record citation, but the document in question is Exhibit 49 in the State Court Record, ECF No. 6-1, PageID 548, et seq., and the allegation appears at Claim V:

> The Judge used false, incorrect and totally unsubstantiated claims that this Appellant shot a man in the past. This falsified allegation was used to give the appearance that the maximum sentence imposed was substantiated. Not only did Appellant never shoot the man in question, that man has filed an affidavit that not only did Appellant never shoot him, but that he has never been shot.
>
> Appellate counsel was ineffective for failing to include this claim as a component of the assignment of error challenging the sentence and had appellate counsel included this false, misleading and prejudicial

> action by the Judge the outcome of the appeal process would have
> been different.

*Id.* at PageID 554.  There is no affidavit of Deon Draughan attached to this 26(B) application.

Petitioner's counsel avers that it exists, but gives no record reference (Traverse, ECF No. 17,

PageID 1428-29).  The Fifth District denied this 26(B) Application as untimely.  State v. Barnes,

Case No. CT2015-013 (5th Dist. Dec. 5, 2016)(copy at State Court Record, ECF No. 6-1, PageID

562-63).

No such affidavit is mentioned in Barnes's Sentencing Memorandum, which was

presumably filed after the presentence investigation report from which Judge Fleagle derived the

information about the shooting (State Court Record, ECF No. 6, Ex. 5, PageID 66-67).  The

supposed shooting of Draughan is also not mentioned in the State's Sentencing Memorandum,

which recites the following regarding recidivism:

> In the case at bar, the Defendant has a lengthy and serious criminal
> record. including a 2013 conviction for Trafficking in cocaine, and
> for the manufacturing of cocaine. Before that he served 6 years in
> prison for trat1icking in drugs from 2006, possessed a firearm in
> violation of law in 2006, did 2 years for Possession a felony-two
> quantity of drugs in 200l and 2002, as well as a number of
> misdemeanor offenses.

*Id*. at Ex. 4 PageID 62.

After his direct appeal, Barnes was resentenced.  At the hearing his attorney referenced

affidavits from two eyewitnesses, one of whom testified at trial, but nothing from Draughan

(Transcript, State Court Record ECF No. 6-3, PageID 1341.)  Neither his attorney nor Barnes in

his allocution said anything about Draughan.  *Id.*  The judge did not advert to the Draughan

shooting in the re-sentencing, but said he had reviewed the presentence investigation and that

Barnes's "history of criminal conduct demonstrates that consecutive sentences are necessary to

protect the public from future crime." *Id.* at 1350. Barnes was thirty-five at the time of re-sentencing, and therefore not a youthful offender.

Barnes did not raise a claim of judicial bias on his direct appeal from re-sentencing (State Court Record, ECF No. 6-1, Ex. 42, PageID 451). Barnes filed a *pro se* App. R. 26(B) Application to Reopen ("Second 26(B) Application") that appeal and raised the same claim of judicial bias he had raised in his First 26(B) Application. He again claims that an affidavit from Draughan exists, but gives no record reference to it[1]. *Id.* at Ex. 57, PageID 606-07.)

The Fifth District dismissed Barnes's First 26(B) Application because it was untimely filed. It considered Barnes's Second 26(B) Application on the merits as to the first two omitted assignments of error and held: "Appellant's first and second proposed assignments of error again contest his maximum consecutive sentence, citing *State v. Bonnell,* 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E. 3d 659. This court has reviewed appellant's sentence twice. We do not find any evidence of prejudice regarding this issue." *State v. Barnes,* Case No. CT2016-0024 (5th Dist. Aug. 28, 2017) (copy at State Court Record, ECF No. 6-1, Ex. 58, PageID 615-16).

A criminal defendant is undoubtedly entitled to an unbiased judge as a matter of due process. *Williams v. Pennsylvania*, 579 U.S. ___, 136 S. Ct. 1899 (2016); *Tumey v. Ohio*, 273 U.S. 510 (1927), *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868 (2009). However, the source of disqualifying bias must ordinarily be extrajudicial. *Liteky v. United States,* 510 U.S. 540 (1994). Since the decision in *Liteky,* "federal courts have been uniform in holding that § 455(a) cannot be satisfied without proof of extrajudicial bias, except in the most egregious cases." Flamm, Judicial Disqualification 2d § 25.99, *citing In re Antar,* 71 F.3d 97 (3rd Cir. 1995), overruled on other grounds *Smith v. Berg*, 247 F.3d 532, 534 (3rd Cir. 2001).

---

[1] If Petitioner files objections to this Report, he is ORDERED to include a reference to the purported Draughan Affidavit in the State Court Record or to attach a copy showing when it was filed in the Common Pleas Court.

Barnes presents no evidence of extrajudicial bias. Judge Fleagle obviously took his observation about the Draughan shooting from the presentence investigation report[2]. It is not evidence of bias for a judge to rely on facts presented in a presentence investigation ("PSI.") If the PSI was incorrect about this shooting, Barnes had an obligation to raise the error before or at sentencing, but it is not mentioned in the Sentencing Memorandum or in the oral transcript. Since the judge's reliance on the prior shooting appears of record, Barnes was obliged to raise it on direct appeal or face the *res judicata* bar of *State v. Perry*, 10 Ohio St. 2d 175 (1967). It could have been properly raised as an omitted assignment of error on the First 26(B) Application, as it was, but that Application was untimely. Because failure to file such an Application on time is an adequate and independent state ground of decision, this claim could have been procedurally defaulted on the basis of the dismissal of the First Application. *Hoffner v. Bradshaw*, 622 F.3d 487, 504-05 (6th Cir. 2010).

However, the Fifth District did not treat the claim as procedurally defaulted, but decided it on the merits when presented in the Second 26(B) Application, effectively waiving Barnes's failure to present it on the first direct appeal and his untimeliness on the First 26(B) Application.

Of course, a Rule 26(B) application preserves for habeas review only the ineffective assistance of appellate counsel arguments, "not the underlying substantive arguments." *Wogenstahl v. Mitchell*, 668 F.3d 307, 338 (6th Cir. 2012), *citing Lott v. Coyle*, 261 F.3d 594, 612 (6th Cir. 2001). Technically, what the Fifth District was deciding as to the Second 26(B) Application is that Barnes did not receive ineffective assistance of appellate counsel on direct appeal from resentencing when the claim was not raised there, although this is done without mentioning that a Rule 26(B) Application is limited to ineffective assistance of appellate counsel

---

[2] That report is not part of the State Court Record and would not ordinarily be furnished to a hebas court.

claims.

A criminal defendant is entitled to effective assistance of counsel on appeal as well as at trial, counsel who acts as an advocate rather than merely as a friend of the court. *Penson v. Ohio*, 488 U.S. 75 (1988); *Evitts v. Lucey*, 469 U.S. 387 (1985); *Mahdi v. Bagley*, 522 F.3d 631, 636 (6th Cir. 2008). Counsel must be appointed on appeal of right for indigent criminal defendants. *United States v. Cronic,* 466 U.S. 648 (1984); *Anders v. California*, 386 U.S. 738 (1967); *Douglas v. California*, 372 U.S. 353 (1963). The right to counsel is limited to the first appeal as of right. *Ross v. Moffitt*, 417 U.S. 600 (1974). The *Strickland* test applies to appellate counsel. *Smith v. Robbins*, 528 U.S. 259, 285 (2000); *Burger v. Kemp,* 483 U.S. 776 (1987). "To evaluate a claim of ineffective assistance of appellate counsel, then, the court must assess the strength of the claim that counsel failed to raise." *Henness v. Bagley*, 644 F.3d 308, 317 (6th Cir. 2011), *citing Wilson v. Parker*, 515 F.3d 682, 707 (6th Cir. 2008). "Counsel's failure to raise an issue on appeal amounts to ineffective assistance only if a reasonable probability exists that inclusion of the issue would have changed the result of the appeal." *Id.*, *citing Wilson*, 515 F.3d at 707.

Petitioner's counsel does not argue the Third Ground for Relief as an ineffective assistance of appellate counsel claim, but directly on the merits of the judicial bias issue. Because the Fifth District reached the merits of the judicial bias issue, this Court can also reach the merits.

The only way Judge Fleagle apparently knew about the Draughan shooting was from the PSI. It is not evidence of judicial bias that a judge relies for sentencing on facts reported to him or her by the court's probation department. Barnes's claim appears to be that Judge Fleagle persisted in relying on that prior crime even after it was pointed out to him that Draughan disclaimed the shooting. But when was the Draughan Affidavit presented to Judge Fleagle? No time reference is given in the Traverse or indeed in any of the state court filings on this issue.

Moreover, a judge cannot be shown to have been biased by relying on a presentence investigation report in the face of a later affidavit challenging the facts in the PSI. An affidavit, after all, is hearsay testimony, inadmissible for proof of the truth of its content.

As noted above, the Fifth District decided this issue of judicial bias on the merits. Although the holding is cursory, it counts as a holding on the merits under *Harrington*. 562 U.S. at 103. A habeas court is required to defer to such a state court holding unless it is contrary to or an objectively unreasonable application of clear Supreme Court precedent. Barnes has not shown that the decision of the Fifth District on the judicial bias issue is contrary to or an objectively unreasonable application of the Supreme Court precedent on judicial bias cited above. Therefore, the Third Ground for Relief should be dismissed.

**Conclusion**

Based on the foregoing analysis, it is respectfully recommended that the Petition be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied a certificate of appealability and the Court should certify to the Sixth Circuit that any appeal would be objectively frivolous and therefore should not be permitted to proceed *in forma pauperis*.

February 6, 2019.

s/ *Michael R. Merz*
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  A party may respond to another party=s objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140, 153-55 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).